UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JAVIER MONGE,

     Plaintiff,

          v.

GLEN COVE MANSION HOSPITALITY, LLC,

     Defendant.

------------------------------------------------------------------x

**Case No.: 18-cv-7229 (SJF)(SIL)**
**MEMORANDUM & ORDER**

FILED
CLERK

4/2/2020 3:33 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

FEUERSTEIN, Senior District Judge:

I.     Introduction

     Presently before the Court is the fee application of Plaintiff Javier Monge ("Plaintiff" or "Monge"), filed after settlement of this action brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA"). (*See* ECF No. 27 ("Fee Application"); *see also* ECF No. 27-6 ("Support Memo.").) Defendant Glen Cove Mansion Hospitality, LLC ("Defendant" or "Hotel") opposes the amount of fees sought. (*See* ECF No. 27-15 ("Opposition" or "Opp'n").) For the following reasons, the Fee Application is GRANTED in part.

II.     Background

     After twelve years of practicing in other areas of law, *e.g.*, representing defendants in commercial, and general and professional liability cases for mid-sized defense firms; supervising the litigation of complex legal malpractice claims and negotiating complex settlements for a Fortune 500 insurance company (*see* Tucek Aff. (ECF No. 27-1), ¶45), in 2009, Monge's counsel, Jennifer Tucek (hereafter, "Counsel" or "Tucek"), established a solo practice "handl[ing] 113 ADA cases on behalf of Mr. Monge and four other Plaintiffs in the Eastern and

Southern Districts of New York." (*Id.* at ¶46.)  Of those 113 cases, 40 have been filed on behalf of Monge in this District.[1]

On December 19, 2018 and on behalf of Monge, Tucek commenced this case against the Defendant, a hotel, pursuant to the ADA, alleging that "Plaintiff, who suffers from cerebral palsy and ambulates in a wheelchair" "attempt[ed] to plan a vacation," but while doing so "was unable to determine the accessibility of the Hotel, []or make a reservation on-line, as Defendant's website did not conform the federal legal requirements which took effect in 2013." (*Id.* at ¶7; *see also* Complaint (ECF No. 1).)  This was one of several nearly identical actions Tucek brought on behalf of Monge in the Eastern District against other defendant hotels within a two-month span of this case being filed.[2]

In this action, the correct entity was not initially named; as a result, in answering the Complaint, Defendant initially filed a general denial.  (*See* Answer (ECF No.8) ("Defendant does not own or operate the hotel known as the Glen Cove Mansion (a/k/a the Mansion at Glen Cove) referenced in the Complaint.  As such, it denies each and every allegation contained in the

---

[1]  A March 31, 2020 review of the District's docketing system reveals 40 cases having been filed by Monge.

[2]  The other cases are:

| Case No. | Commencement Date | Procedural Posture | Relevant Date |
|---|---|---|---|
| 12/04/2018 | 18-cv-6889 | Voluntary Dismissal | 02/13/2019 |
| 12/11/2018 | 18-cv-7050 | Voluntary Dismissal | 05/28/2019 |
| 01/03/2019 | 19-cv-38 | Settled | 05/28/2019 |
| 01/03/2019 | 19-cv-40 | Voluntary Dismissal | 04/23/2019 |
| 01/03/2019 | 19-cv-41 | Voluntary Dismissal | 08/18/2019 |
| 01/23/2019 | 19-cv-451 | Pending | N/A (*See* ECF No. 24 (reporting case status).) |
| 01/28/2019 | 19-cv-523 | Voluntary Dismissal | 08/09/2019 |
| 01/28/2019 | 19-cv-524 | Voluntary Dismissal | 10/22/2019 |

(Hereafter, the "Similar Hotel Cases".)

Complaint.").)  To correct that error, on March 19, 2019, the parties moved the Court to "So

Order" a stipulation that recognized the Hotel as the properly named Defendant and corrected the

case's caption.  (*See* ECF No. 9.)  That motion was granted on March 20, 2019.  (*See* ECF No.

10.)

On April 18, 2019, the Court conducted an Initial Conference with the parties (*see* ECF

No. 15 (Minute Entry)), during which, *inter alia*, Tucek articulated the changes Monge sought in

the Hotel's website and booking policies, and the Hotel's counsel indicated his client's desire to

settle the case.  Prior to the next Status Conference, scheduled for May 21, 2019, Hotel's counsel

filed a Status Report reporting the "completion of the requested changes to [the Hotel's] website"

and requesting the Status Conference be advanced in the hopes of "conclud[ing] this case as

quickly as possible."  (ECF No. 16 (including screen shots of Hotel's website).)  Tucek opposed

the Hotel's requested advancement, stating, *inter alia*:

> *Although not perfect, the website has been vastly improved
> and Plaintiff will accept the changes as adequate if the parties are
> able to enter into a written agreement* to maintain the policies as
> stated in (a) and (b) above, and implement and maintain the
> policies as stated in (c) and (d) above.  Simply making changes to
> the website is not sufficient for purposes of settlement, as the
> policies could just be changed again anytime.  Indeed, the website
> has undergone numerous changes over the past few months.

> *It appears the only issue left to address is reimbursement of
> Plaintiff's legal fees*.  I have not heard from Defense counsel since
> the April 18 conference and am inviting him to contact me to
> address the fee issue and any other aspect of the settlement.  If he
> does not contact me, I am prepared to address the issue at the May
> 21 conference or submit a fee application to the court.

(ECF No. 17 (emphasis added).)  Ultimately, because of Tucek's "unavailability due to an urgent

personal matter," the May 21 Status Conference was not advanced.  (Case Docket, May 3, 2019

electronic ORDER.)

At the May 21 Status Conference and consistent with her representation that she would accept the website changes as adequate, Tucek stated she was satisfied with the changes the Hotel made to its website. However, Tucek continued to press for a written settlement and stated that her attorney fees remained an open issue. In that vein, Tucek informed that Court that while she initially sought $6,000, since she had worked an additional ten (10) hours on the case, her bill had increased by $3,000. Given the lack of agreement as to Tucek's fees, the Court set a briefing schedule for a fee application and scheduled a further status conference for October 3, 2019. (*See* ECF No. 18.)

Before the deadline to serve a fee application expired, Tucek moved for its extension, asserting that since "there is no voluntary settlement between the parties, evidenced by a signed writing or stated on the record, Plaintiff cannot assert that he is the 'prevailing party,' and cannot make a fee application pursuant to Your Honor's May 21 Order." (ECF No. 20 (requesting Fee Application filing deadline "be adjourned until such time as the matter is settled").) Defendant did not respond to the extension motion, which the Court scheduled for a June 27, 2019 Status Conference. (*See* Case Docket, June 18, 2019 electronic ORDER.)

At the June 27 Conference, among other things:

*A. Tucek*: stated she "want[ed] a written settlement stating that [the Hotel] recently implemented both of the items . . . accepted in furtherance of a settlement of this case, and that the[ changes] will be maintained" (ECF No. 27-2, June 27, 2019 Hr'g Tr. ("Tr.") 5:3-7, *attached as* Ex. A to Tucek Aff.); stated she was seeking attorney fees "pursuant to 42 USC 12205 which requires, as a threshold matter, that plaintiff be the prevailing party" (*id.* at 10:20-22; *see also id.* at 12:8-17); acknowledged "that a settlement on the record is an enforceable settlement" (*id.* at 10:23-24); but, appeared concerned that Defendant might challenge Plaintiff's "prevailing party" status in objecting to the Fee Application (*see id.* at 10:24-25);

*B.  Defendant's counsel* stated, twice, on the record that the Hotel will maintain Plaintiff's requested changes to its website (*see id.* at 5:21-6:4; *see also id.* at 6:21-7:2); and

*C.  The Court* clarified that Plaintiff would be awarded fees (*id.* at 11:3), implicitly acknowledging Monge's "prevailing party" status.  However, since the parties had not reached an agreement as to attorney fees, a new briefing schedule was set for Plaintiff's Fee Application. (*See id.* at 12:18-13:6.)

III.    Discussion

*A.  The ADA and Attorney Fees*

"The ADA provides a private right of action for which the remedies are limited to injunctive relief and the recovery of fees and costs." *Brown v. Green 317 Madison LLC*, No. 11-cv-4466, 2014 WL 1237448, at *2 (E.D.N.Y. Feb. 4, 2014)(report & recommendation) (citing 42 U.S.C. §§ 12188(a)(1); 2000a–3(a)).  It is "a fee shifting statute and the Court has discretion to award attorneys' fees to a prevailing party in an ADA action." *Id.* (citing *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 374 F. App'x 119, 124 (2d Cir.2010)); *see also Cankat v. 41st Ave. Rest. Corp.*, No. 15-cv-4963, 2016 WL 7217638, at *3 (E.D.N.Y. Dec. 12, 2015) ("The Court has discretion to award 'a reasonable attorney's fee, including litigation expenses, and cost' to the prevailing party in an ADA litigation." (citing 42 U.S.C. § 12205)); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp.2d 157, 208 (E.D.N.Y. 2006) ("The purpose of [the ADA's] statutory fee shifting is to "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." (quoting *Raishevich v. Foster,* 247 F.3d 337, 344 (2d Cir.2001); further citation omitted)). However, "[w]here cases involve identical legal issues and similar factual issues, the duplicitous nature of the litigation warrants a reduction in the law firm's fee." *Cankat v. 41st Ave. Rest.*, 2016 WL 7217638, at *3 (citing *Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship*, No. 04-cv-

4368, 2006 WL 566101, at *4 (E.D.N.Y. Mar. 3, 2006)); *see also Shariff v. Beach 90th St. Realty Corp.*, No. 11-cv-2251, 2013 WL 6835157, at *7 (E.D.N.Y. Dec. 20, 2013)(finding, where plaintiff and counsel engaged in serial ADA litigation and "cases involve identical legal issues and similar factual issues[, t]he duplicative nature of the litigation warrants a reduction in the law firm's fee award" (internal quotation marks and citations omitted); noting that plaintiff's multiple cases "raise substantially similar claims and the complaints share the same boilerplate language").

### B. Applicable Law re: Attorney's Fees and Costs

"In calculating attorney's fees, the district court must first determine the 'lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case–[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014) (brackets in original) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006) ("In calculating attorney's fee awards, district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate."); *Division 1181 Amalgamated Transit Union-N.Y. Employees Pension Fund and Its Trustees v. D & B Bus Co., Inc.*, 270 F. Supp.3d 593, 617-20 (Part III(E) re: fees), 628 (Part III(F) re: costs) (E.D.N.Y. 2017). The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. *See Hensley*, 461 U.S. at 437, 103 S. Ct. 1933; *see also, e.g.*, *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp.3d 398, 403 (E.D.N.Y. 2019)("The fee applicant bears the burden of adequately documenting and justifying

the hours worked, rates sought, and costs expended." (citing *Monette v. County of Nassau*, No. 11-cv-539, 2016 WL 4145798, at *3, *10 (E.D.N.Y. Aug. 4, 2015); *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011))); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp.2d 281, 298 (E.D.N.Y. 2012) ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." (citing *Hensley*, 461 U.S. at 433)).

    *C. The Present Case*

    This case resembles *Pasini v. Godiva Chocolatier, Inc.*, an FACTA and FDCPA case that "involved no discovery, no motion practice (aside from this [Fee Application]), and no contested hearings," but where plaintiff's counsel sought to recover approximately $83,000 in attorneys' fees and costs. *See* Case No. 17-cv-1812, slip op. at 1 (S.D.N.Y. May 21, 2018), *aff'd*, 764 F. App'x 94 (2d Cir. 2019)(Summary Order). In *Pasini*, Judge Caproni prefaced her ruling on counsel's fee application with "the Southern adage: pigs get fat and hogs get slaughtered." *Id.* Her Honor acknowledged that "[a]ttorneys who take on consumer protection lawsuits are sometimes pursuing a public good—the individual damages are generally quite modest but there is a public interest in ensuing compliance with federal consumer protection laws. . . . [Thus, attorneys are] entitled to recover reasonable fees." However, Judge Caproni would not countenance "aid[ing] and abet[ting] extortion" where "[p]laintiff's attorneys used [the] FACTA as a cudgel to attempt to extract an unreasonable fee." *Id.* (reducing requested attorney fees by approximately 90%). Perhaps more pertinent than its application to the FACTA, which is aimed at providing consumer protection to the financially disenfranchised, is the application of Judge Caproni's warning to the "[t]he ADA[, which] is a trailblazing civil rights law that changed individual lives and national stereotypes about people with disabilities." *Cankat v. 41st Ave. Rest.*, 2016 WL 7217638, *5 (taking issue with ADA cases that "mock the statute's mission by

engaging in serial ADA litigation to take advantage of the statute's fees provision" (citation and internal quotation marks omitted)). (*Cf.*, Tucek Aff. (ECF No. 27-1), ¶46 ("In 2009, I started my own practice and have handled 113 ADA cases on behalf of Mr. Monge and four other Plaintiffs in the Eastern and Southern Districts of New York. Each of these cases has resolved favorably to my clients either by settlement agreement or consent decree."); ¶47 ("I have only had one other occasion to file a fee application, which was granted in its entirety.).) With that said, however, and despite the Hotel's argument that Tucek's fees should be drastically reduced because much of her work was unnecessary and solely benefitted her by generating attorney's fees (*see* Opp'n at 4), while it is clear from the record that Tucek was consistently concerned with attaining "prevailing party" status to ensure Plaintiff's right to reimbursement of her fees and that concern was on equal footing with her concern that the Hotel modify its website to be ADA compliant, the Court refrains from concluding that it took precedence. *Cf., e.g.*, *Taylor v. 312 Grand Street, LLC*, No. 11-cv-5410, 2016 WL 1122027, at *1 (E.D.N.Y. Mar. 22, 2016)(raising concerns "that the motivation behind the case is too much about attorneys' fees and too little about achieving meaningful benefit to her client").

1. Reasonable Hourly Rate

"In setting a reasonable hourly rate, the Second Circuit has stated that the 'district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Valvo v. City of N.Y.*, No. 13-cv-6562, 2018 WL 3999011, at *2[3] (E.D.N.Y. Jan. 23, 2018) (quoting *Arbor*

---

[3] The *Valvor* Court noted the Johnson factors, *to wit*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee for similar

8

*Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Election*, 522 F.3d 182, 190 (2d Cir. 2008)); *see also Lilly v. City of N.Y.*, 934 F.3d 222, 230 (2d Cir. 2019)(explaining that a district court's determination of a reasonable hourly rate "tak[es] account of all case-specific variables" and is set "by considering all pertinent factors, including the *Johnson* factors" (internal quotation marks and citation omitted)). "This Court follows the Second Circuit's 'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate.'" *Trustees of NE Carpenters Health Pension, Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Cali Enters., Inc.*, No. 18-cv-3556, 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019) (quoting *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); further citation omitted); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)(a reasonable hourly rate should be determined through a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district'" (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005))).

"[T]he prevailing rates for attorneys in the E.D.N.Y. . . . are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for

---

work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *2, n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974)).

junior associates." *Cleanup N. Brooklyn*, 373 F. Supp.3d at 404 (citing *Valvo,* 2018 WL 3999011, at *2; *Luca v. County of Nassau*, 698 F. Supp.2d 296, 301 (E.D.N.Y. 2010)(awarding hourly rate of $400 to attorney with more than 25 years' experience and who: specialized in plaintiffs-side civil rights cases; was recognized by his peers as an authority in his specialty; actually litigated his case against a "tenacious adversary"; and obtained an extremely favorable result for his client[4]); *Witeck v. City of N.Y.*, No. 12-cv-981, 2015 WL 5022529, at *3 (E.D.N.Y. Mar. 26, 2015), *report & recommendation adopted in part by* 2015 WL 5022538 (E.D.N.Y Aug. 24, 2015) (awarding named partner, whose practice consisted entirely of trial practice and who customarily billed at $600 per hour and had previously been awarded an hourly rate of $550 by a court in the E.D.N.Y.,[5] an hourly rate of $400 based upon his "background, experience, and expertise as reflected in [his] declaration in support [which] place[d] him in the upper echelon of attorneys who practice civil rights litigation in this district"); *Scharff v. County of Nassau*, No. 10-cv-4208, 2016 WL 3166848, at *5 (E.D.N.Y. May 20, 2016)("*Scharff R&R*")(awarding hourly rate of $400 to attorneys with more than 25 years' experience in Titles II and III of the ADA with "substantial trial and appellate experience in the field of public service disability law" "[b]ased on their expertise and experience, the novelty and complexity of th[e] action and the successful results achieved," noting that "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of

---

[4]  Notably, counsel in *Luca* "bolsters his fee request with numerous affidavits from other experienced civil rights attorneys who practice in the Eastern District; each attest[ed] to the reasonableness of the [counsel's] requested rate." 698 F. Supp.2d at 302.

[5]  *See also Witeck v. City of N.Y.*, No. 12-cv-981, ECF No. 55 (Support Affidavit of Attorney Anthony Colleluori) at 2-5 (E.D.N.Y. Jan. 17, 2014)(describing in detail counsel's 29 years of legal background, experience, and expertise); *see also id.* at 4 ("I have earned a reputation for taking on the work and the cases that other law firms have rejected as difficult, complicated and challenging.").

civil rights law and are recognized by their peers as leaders and experts in their fields" (internal quotation marks and citation omitted)), *report & recommendation adopted by* 2016 WL 3172798 (E.D.N.Y. June 6, 2016); *Shariff v. Alsaydi*, No. 11-cv-6377, 2013 WL 4432218, at *5 (E.D.N.Y. Aug. 15, 2013) (collecting cases supporting awards of hourly rates of $300 to $400 for partners in E.D.N.Y. and awarding attorney with a decade of experience as a solo practitioner primarily handling disability discrimination cases an hourly rate of $325); *see also generally Marshall v. Reisman*, No. 11-cv-5764, 2013 WL 1563335, at *2 (E.D.N.Y. Mar. 25, 2013)("Hourly rates awarded in the Eastern District of New York are typically based on years of experience, and generally range from $300-$400 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." (internal citations omitted)), *report & recommendation adopted by* 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013).

"[T]he fee applicant has the burden 'to justify the reasonableness of the requested rate,' and plaintiffs' attorney[]'should establish [her] hourly rate with satisfactory evidence—in addition to the attorney['s] own affidavits.'" *Scharff R&R*, 2016 WL 3166848, at *4 (quoting *Barbu v. Life Ins. Co. of N. Am.*, No. 12-cv-1629, 2015 WL 778325,[6] at *3 (E.D.N.Y. Feb. 24, 2015); further citation omitted); *see also Jara v. P.N. Fin., Inc.*, No. 10-cv-6274, 2014 WL 4388515, at *6 (S.D.N.Y. Sept. 4, 2015)(stating it is the fee applicant's "burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates" (quoting *Farbotko v. Clinton*, 433 F.3d 204, 209 (2d Cir. 2005); further citation omitted)), *report & recommendation adopted by* 2014 WL 5100222 (S.D.N.Y. Oct. 10, 2014); *LV v. N.Y. City Dep't of Educ.*, 700 F. Supp.2d 510, 521 (S.D.N.Y.

---

[6] *Vacated in part on reconsideration by* 2015 WL 13753126 (E.D.N.Y. May 20, 2015) ("*Barbu Reconsideration Decision*")(upon reconsideration, holding "that fee award should be calculated using a uniform hourly rate, given that [counsel] is a solo practitioner").

2010)(instructing that it is fee applicant's burden to "offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate").

In its Opposition, the Hotel does not address the hourly rate sought by Tucek. In support of her requested $400 hourly billing rate, Tucek offers only her Affirmation. (*See* Tucek Aff. (ECF No. 27-1).) In it, she affirms in general terms that: she has been practicing law since 1997; she began her own practice in 2009, handling "ADA cases on behalf of Mr. Monge and four other Plaintiffs in the Eastern and Southern Districts of New York"; and, each of those 113 ADA cases "resolved favorably to [her] clients either by settlement or consent decree." (*Id.* at ¶¶45, 46.) In only one other ADA case, brought in the Southern District of New York, has Tucek submitted a fee application; in that case, the court summarily approved Tucek's requested $300 hourly billing rate. (*See id.* at ¶47 (citing *Monge v. Coogan River Assocs.*, No. 11-cv-4795[7] (S.D.N.Y. 2013) (unpublished endorsed order).) Tucek has not provided any other evidence that would support her requested $400 hourly rate. Indeed, what she offers pales in comparison with, *e.g.*, the detailed affidavit submitted by the senior partners in *Luca*, *see* 698 F. Supp.2d at 302; (*see also supra* at note 4), and in *Witeck*, *see* 2015 WL 5022529, at *2; (*see also supra* at note 5) (partner detailing his legal education and extensive legal background, including numerous extracurricular legal activities, warranting the court finding partner to be in the upper echelon of attorneys representing plaintiffs in civil rights litigation and justifying an hourly billing rate of $400, which is at the upper range of approved billing rates for partners in the Eastern District). Thus, upon the record presented, the Court disagrees with Tucek's bald assertion that her experience and handling of this case "is consistent with the work effort of other plaintiff's counsel in this [D]istrict with the same level of experience, who are regularly awarded fees in the

---

[7] Tucek did not provide the Court with a copy of the endorsed order. *See Monge v. Coogan River Assocs.*, No. 11-cv-4795, ECF No. 54 (S.D.N.Y. June 12, 2013).

$400 per hour range." (Support Memo. at 7.) *Cf.*, *e.g.*, *Hugee*, 852 F. Supp.2d at 298 ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." (citing *Hensley*, 461 U.S. at 433)); *McMahon-Pitts v. Sokoloff*, No. 15-cv-4975, 2017 WL 1011473, at *2 (E.D.N.Y. Mar. 15, 2017)(same; quoting *Hugee*).

Consideration of other factors, such as the type of case presented, the nature of the litigation, Tucek's experience, and the size of Tucek's firm, further countenances against awarding her an hourly rate at the high end of this District's accepted partner range. *See, e.g., Barbu Reconsideration Decision*, 2015 WL 13753126, at *2 (considering, *inter alia*, nature of applicant's firm (*i.e.*, solo practice), applicant's experience, and type of case in determining hourly rate to be awarded); *Cali Enters.*, 2019 WL 2076784, at *5 ("Of course, 'the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" (quoting *Siracuse v. Program for the Dev. of Human Potential*, No. 07-cv-2205, 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012))); *Chavez*, 2016 WL 1171586, at *4 ("[T]he Court must determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." (quoting *Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-cv-5365, 2013 WL 5970613, at *10 (E.D.N.Y. Nov. 8, 2013); internal quotation marks omitted)); *Mary Jo C. v. Dinapoli*, No. 09-cv-5635, 2014 WL 7334863, at *5 (E.D.N.Y. Dec. 18, 2014) (identifying, *inter alia*, the size of the firm as one of the considerations in determining reasonable hourly rates)(citations omitted). This conclusion is buttressed by the addition observation that in the instant case, Tucek commenced this action using a boilerplate Complaint that is virtually identical to the complaints filed in the Similar Hotel Cases within a two-month period of filing this action. Like this case, the Similar Hotel Cases were brought against defendant hotels

13

allegedly "to remediate all violations of the [ADA Accessibility Guidelines] found to exist upon [each Hotel's] Website and Third-Party Websites (relative to the Hotel)." (Complaint, ¶24.) As noted (*see supra* at note 2), the majority of the Similar Hotel Cases were voluntarily dismissed; one has settled, and another remains pending. As with those Cases, the instant case was not complex, settling after the Defendant made requested changes to its website and stated, on the record, that the changes would be maintained going forward. (*See* Tr., 6:21-7:2).

Finally, to the extent Tucek relies upon a 2013 Southern District hourly rate award of $300 (*see* Tucek Aff., ¶47) to support her requested $400 hourly rate in this case, her reliance upon that case is unavailing. In *Simmons v. N.Y. Transit Authority*, 575 F.3d 170, 177 (2d Cir. 2009), the Second Circuit "ma[de] clear that Southern District attorney rates are presumptively inapplicable to Eastern District cases." *Barbu Reconsideration Decision*, 2015 WL 13753126, at *2 n.2 (citing *Simmons* case). Tucek has not presented any evidence which overcomes that presumption. Moreover, as then-District Judge Bianco stated, "[a]lthough [Southern District] rates provide a useful reference point, an award for services performed in this District must be consistent with rates in this forum, which are lower than those in the Southern District." *Id.* Even if that were not the case, an endorsed order provides this Court with little guidance as to the awarding court's rationale in finding Tucek's $300 hourly rate to be reasonable. Rather, what is more helpful in assessing the reasonableness of Tucek's requested $400 hourly rate is her earlier representation to this Court that she had worked an additional ten (10) hours on this case, which increased her bill by $3,000.[8] Simple math reveals that Tucek had been billing her time at $300

---

[8] As stated (*see supra* at p.4), at the May 21 Status Conference, Tucek informed the Court she initially sought $6,000, but because of an additional 10 hours she allegedly worked on the case, her bill had increased by $3,000. While an examination of the Legal Bill shows that Tucek billed 19.5 hours from the beginning of this case to just prior to the April 18 Initial Conference (which, at $300 per hour, totals $5,850 and rounds up to the proffered $6,000 figure), exclusive of the 1.3 hours billed for preparation and attendance at the Initial Conference, only an additional

per hour, presumptively her customary hourly rate. She has not offered any evidence supporting the higher rate she now seeks. Rather, given this Court's familiarity with this case in conjunction with consideration of: the relevant *Johnson* factors; the lack of any evidence supporting Tucek's belief that her experience and efforts are consistent with those of other ADA attorneys who have been awarded a $400 hourly rate in this District; the prevailing rates in this District in comparable ADA cases awarded to attorneys with similar skill levels and expertise as Tucek; Tucek's status as a solo practitioner who brings similar ADA cases on behalf of Monge and a few other very select clientele; the simple, straightforward nature of this ADA case; this case having been commenced with the same boilerplate complaint used in the Similar Hotel Cases; and, that this case settled, even if that settlement was not immediate, the Court finds reasonable an hourly rate of $300.

### 2. Reasonable Hours

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06-CV-7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). * * * "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" [*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)] (quoting *Hensley*, 461 U.S. at 434; then quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item

---

3.1 hours were billed between the Initial Conference and the May 21 Status Conference. (*See* ECF No. 27-3, Pl.'s Ex. B, *attached to* Tucek Aff.) At $300 per hour, that equates to $930, less than a third of the claimed additional $3,000 in legal fees. Even if the Court were to include the 1.3 hours billed on April 18, 2019 with the additional 3.1 hours, those 4.4 hours billed at $300 per hour totals $1,320, less than half the claimed additional $3,000 in legal fees.

findings concerning what may be countless objections to individual billing items.").

*Cali Enters.*, 2019 WL 2076784, at *6; *see also Scharff*, 2016 WL 3166848, at *6 ("In reviewing

a fee application, the court should exclude hours that are 'excessive, redundant, or otherwise

unnecessary.'" (quoting *Barbu.* 2015 WL 778323, at *4)); *5316 Church Ave. LLC v. Yhun*, No.

14-cv-7376, 2018 WL 6204615, at *3 (E.D.N.Y. July 18, 2018)(stating that court must determine

whether hours expended on case are reasonable), *report & recommendation adopted by* 2018

WL 6201709 (E.D.N.Y. Nov. 28, 2018); *Mary Jo C.,* 2014 WL 7334863, at *8-9 (discussing the

reduction of excessive, redundant, or otherwise unnecessary hours).  In assessing whether billed

hours were reasonably expended, "the court looks to 'its own familiarity with the case and its

experience generally as well as to the evidentiary submissions and arguments of the parties.'"

*Scharff*, 2016 WL 3166848, at *6 (quoting *Bliven v. Hunt,* 579 F.3d 204, 213 (2d Cir. 2009)); *see*

*also Litkofsky v. P&L Acquisitions, LLC*, No. 15-cv-5429, 2016 WL 7167955, at *10 (E.D.N.Y.

Aug. 19, 2016)("To determine whether the number of hours spent by Plaintiff's counsel was

reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the

practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" (quoting

*Fox. Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21,

2005))(brackets and ellipsis in *Litkofsky*; further citation omitted), *report & recommendation*

*adopted by* 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016).  "The essential consideration is whether

'at the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures.'"  *Scharff*, 2016 WL 3166848, at *6 (quoting *Harty v. Par Builders, Inc.,* 12-cv-

2246, 2016 WL 616397, at *4 (S.D.N.Y. Feb. 16, 2016)); *cf.*, *Cleanup N. Brooklyn*, 373 F.

Supp.3d at 407 (stating that "in reviewing a fee application, 'trial courts need not, and . . . should

not, become green-eyeshade accountants,' and 'may take into account their overall sense of a

suit, and may use estimates in calculating and allocating an attorney's time.'" (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))).  Further, the Supreme Court has instructed: "'In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important [in the statutory fee-shifting context].  Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority.'"  *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)(*en banc*))(emphasis in original).

The Hotel's objections to Plaintiff's Fee Application are directed to the number of hours billed.  (*See* Opp'n.[9])  More particularly, the Hotel argues no fees are warranted here as the case was unnecessary and filed for Tucek's benefit and not that of Monge.  (*See* Opp'n at 1-3 (citing *Taylor*, 2016 WL 1122027, at *1)).  The Hotel further asserts that in cases such as this one, when a court is presented with serial ADA litigation which raises concerns that the litigation is to take advantage of the ADA's attorney's fees provision, a court "may '(i) cut the number of hours billed, (ii) reduce the amount of the fee, or (iii) disallow the entire amount.'"  (*Id.* at 1 (quoting *Shariff v. Beach 90th*, 2013 WL 6835157, at *7; and, collecting cases).)  Defendant also contends that Tucek engaged in unnecessary litigation here "that only served to increase the hours billed." (*Id.* at 2; *see also id.* at 3 (listing examples of alleged unnecessary billed time).)  Relatedly, Defendant contends that Tucek handled this case in a manner that is not consistent with a reasonable paying client's wish to have his case resolved quickly and inexpensively.  (*See id.* at 4.)  Moreover, the Hotel argues it should not be responsible to pay for Tucek's mistakes, *e.g.*, Tucek: suing the wrong entity; moving to strike the Hotel's Answer after stipulating to substitute proper entity and change caption; and, drafting and attempting to enter into unnecessary stipulation.  (*See id.* at 5.)  Finally, arguing that "this entire case could have been avoided had

---

[9]  In its Opposition, Defendant does not address Plaintiff's status as the "prevailing party".

[Tucek] merely sent a demand letter instead of filing a complaint" (*id.*) and noting the Similar Hotel Cases, Defendant presses the Court to use its discretion to "heavily reduce[]" Tucek's fees. (*See id.* at 5-6.)

While, arguably, there is validity in the Hotel's contention that the alleged ADA violation could have been rectified short of commencing a federal action, as Plaintiff correctly points out, a demand letter is not a prerequisite to bringing an ADA violation action. (*See* Reply at 5.) However, the Court is not convinced that a reasonable, paying client, which it assumes Monge to be,[10] would be willing to spend $15,320 to litigate this relatively straightforward ADA case, which resulted in a settlement with the Hotel making the requested changes to its website and agreeing to maintain certain reservation policies in the future. With that in mind, the Court turns to examining the 38.3 hours[11] billed by Tucek from December 7, 2018 through July 31, 2019. (*See* ECF No. 27-3 ("Legal Bill").)

Upon careful review of Tucek's contemporaneously billed hours, the Court finds several issues warranting an across-the-board percentage reduction in hours. First, Tucek vacillated between billing in one-tenth hour increments and quarter-hour increments. While use of quarter-hour increments is an unsettled issue in the Second Circuit, "[s]ome courts have held that a reduction is warranted where the billing records indicate instances in which the billing clearly inflated the attorneys' hours." *Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, No. 11-cv-3652, at *9 (E.D.N.Y. Jan. 6, 2014)(citing *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.,* 894 F. Supp.2d. 415, 441–42 (S.D.N.Y.2012) (noting split of authority in district

---

[10]  Notably, Tucek has not submitted a retainer agreement between herself and Monge.

[11]  After tallying Tucek's billed hours (repeated several times to ensure accuracy), the Court calculates her aggregate billed hours to be 36.6 (*i.e.*, not the 38.3 hours requested); its analysis of Tucek's hours will proceed using that 36.6-hour total.

court decisions over whether quarter-hour billing results in over-billing)), *report & recommendation adopted by* 2014 WL 883893 (E.D.N.Y. Mar. 6, 2014). At a minimum, using quarter-hour incremental billing makes it more difficult to assess the reasonableness of the time spend on the associated billed tasks. (*See, e.g.*, Legal Bill, entries dated: 1/16/2019; 2/13/2019; 2/21/2019; 3/7/2019; 3/11/2019; 3/13/2019; 3/27/2019 (two); 5/2/2019; 7/10/2019 (two).) Second, in several instances, Tucek blocked billed, which stymies the Court's ability to determine if the billed time is excessive. (*See, e.g.*, Legal Bill, entries dated: 2/22/2019; 3/8/2019; 3/11/2019; 5/1/2019; 5/29/2019; 6/4/2019; 7/31/2019.) Third, in her bill, Tucek has included several hours which are attributable to her initially suing the wrong entity. (*See, e.g.*, Legal Bill, entries dated: 12/7/2018, 3/11/2019 (two), 3/12/2019, 3/13/2019; *cf.*, Opp'n at 5, and Rachmuth Aff., ¶30(a)-(c).) It is well-established that a client should not incur fees as a result of an attorney's mistake. *See Luca*, 698 F. Supp.2d at 306 ("No client would pay for fees incurred correcting errors made by an attorney"); *see also Scharff R&R*, 2016 WL 3166848, at *7. For the same reason, such fees should not be taxed to a defendant under a fee-shifting scenario. *See Hensley*, 461 U.S. at 434. Fourth, there appears to be redundancy in Tucek's billing regarding the drafting of proposed settlements. (*Cf.*, Legal Bill, entry dated 2/13/2019 (billing .5 hours for preparing settlement proposal), *with* entry dated 5/3/2019 (billing .75 hours for preparing two settlement agreements); *cf.*, Tr. 3:17-24 (stating that Plaintiff's proposed written settlement agreement "is very simple and very standard").) Fifth, it appears that Tucek billed her travel time to and from the Court for the May 21, 2019 Status Conference at 100% versus the customary 50% billing discount applied to travel time and observed in this District.[12] *See, e.g.,*

---

[12] Tucek billed 2.5 hours for her attendance at the May 21 Status Conference, stating: "Appearance before Judge Feuerstein [C]entral Islip, *inclusive of travel time*." (Legal Bill, entry dated 5/21/2019 (emphasis added).) Since the three conferences held in this case did not exceed one half hour, subtracting a half-hour from the 2.5 hours billed for attendance at the Status

*Hugee*, 852 F. Supp.2d at 302 (colleting cases).  Finally, as discussed *supra*, this case was

commenced with a boilerplate complaint used in the Similar Hotel Cases; thus, to bill 1.9 hours

for its preparation and filing (together with the summons and Civil Cover Sheet) is excessive.

(*See* Legal Bill, entry dated12/19/2019.)  Considering the cumulative effect of these issues,

"rather than engage in an entry by entry critique of the time billed, the undersigned will reduce

the amount of compensable time by a percentage that fairly reflects th[o]se consideration."

*Scharff R&R*, 2016 WL 3166848, at *7.  Hence, in its discretion and given its familiarity with

this case, in this instance the Court finds an across-the-board thirty-five percent (35%) reduction

is warranted.  Thus, of the 36.6hours billed, 23.8 will be awarded.

      3.  <u>Determination of Costs</u>

      Plaintiff seeks reimbursement for cost incurred, totaling $561.51,[13] *to wit*:

      (a.)    $400.00 for his filing fee;
      (b.)    $90.75 for service of process; and
      (c.)    $74.76 for transcription service.

"The fee applicant bears the burden of adequately documenting and itemizing the costs

requested."  *Volpe v. Nassau County*, No. 12-cv-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct.

24, 2016)(internal quotation omitted); *see also Litkofsky*, 2016 WL 7167955, at *12 (citing *Lee v.

Santiago*, No. 12-cv-2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is the

requesting party's burden to support its application, and this means that the requested costs must

be substantiated.")).  Because Tucek has adequately substantiated the costs incurred in this case

(*see* ECF No. 27-5, Pl.'s Ex. D, *attached to* Tucek Aff. (providing proof of payments of costs)),

---

Conference, leaves a balance of 2 hours.  Recognizing that Tucek's office is located in
Manhattan (*see, e.g.*, Cover Sheet to Legal Bill (providing an office address on Madison Avenue
in Manhattan)), the Court presumes the remaining 2 hours are attributable to Tucek's travel time
for the approximate 100-mile round-trip between her office and the Courthouse.

[13]  According to the Court's calculation, these costs total $565.51.

and Defendant has not objected to them, they are approved as calculated by the Court, *i.e.*, $565.51.

IV.     <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED:

*A.*     That Plaintiff's Fee Application is GRANTED in part, such that he is awarded

**$7,705.51**, which consists of $7,140.00[14] in attorney's fees and $565.51 in costs;

*B.*     The June 1, 2020 control-date Status Conference is marked off the Court's

calendar; and

*C.*     The Clerk of Court is directed to close this case.

**SO ORDERED** this 2nd day of April 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*
        Sandra J. Feuerstein
        United States District Judge

---

[14] This total is arrived at by multiplying the 23.8 awarded hours by the awarded hourly rate of $300.